UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JAYVON R. FLEMMING,

                Plaintiff,

v.                                                         Case No. 25-cv-1107-pp

RN MATHEW BARTH and DR. SMITH,

                Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

---

Plaintiff Jayvon R. Flemming, who is incarcerated at Waupun Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants provided him inadequate medical care. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On August 8, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $2.17. Dkt. No. 5. The court received that fee on September 10, 2025. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.

Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint names as defendants Registered Nurse Mathew Barth and Dr. Smith, both of whom work at Waupun. Dkt. No. 1 at 1. The plaintiff alleges that on November 12, 2024, while he was housed in restricted housing at Waupun, he cut himself, which caused him to lose "a significant amount of blood," and took sixty pills "in front of staff." Id. at 2. He alleges that staff "pulled [him] out [of] his cell" to see Nurse Barth. Id. The plaintiff says that he told Barth what he had done and that Barth took his vitals, cleaned the wound on his arm and placed a bandage on it. Id.

The plaintiff alleges that he "was taken to a strip cage cell," where his symptoms began to worsen. Id. at 2–3. The plaintiff asked that medical staff again examine him, and Barth came to the plaintiff's cell. Id. at 3. The plaintiff told Barth that he needed to go to the hospital because "it felt like he was about to die," "he was having a hard time breathing" and he felt "light headed and really needed medical treatment." Id. Barth responded that the plaintiff's vitals were "fine," so the plaintiff "[would] be fine." Id.

The plaintiff alleges that staff moved him to another cell. Id. He says that shortly after he lay down, he vomited "everywhere" and lost consciousness. Id. The plaintiff says that an unnamed correctional officer found him "in the middle of the floor laying uncon[s]cious in a pool of vomit." Id. He says that staff pulled him from his cell, and Barth again examined him. Id. The plaintiff says that he "begged for help" and medical treatment, but that "Barth did nothing" and told him that the on-call doctor (defendant Smith) "said not to send Plaintiff to the hospital." Id.

The plaintiff returned to his cell, where he says he was on his hands and knees as staff removed his leg restraints. Id. He says he again vomited, had a hard time breathing and told an officer that he "was about to die." Id. He says that the officer left his cell to notify a nurse. Id. The officer returned, told the plaintiff that the nurse "didn't care" and told the officer to "place plaintiff in this cell." Id. The plaintiff says that he remained in the cell, struggling to breathe and "vomitting [*sic*] all night." Id. He says that he lost consciousness

4

several times and did not receive any further treatment. Id. The plaintiff seeks $250,000 in damages against each defendant. Id. at 4.

C.  Analysis

The court analyzes the plaintiff's allegations regarding the denial of proper medical care under the Eighth Amendment. See Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837). "The standard of deliberate indifference 'requires more than negligence or even gross negligence; the plaintiff instead must show that the defendants were essentially criminally reckless, that is, ignored a known risk.'" Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 763 (7th Cir. 2021) (quoting Huber v. Anderson, 909 F.3d 201, 208 (7th Cir. 2018)).

The plaintiff alleges that he cut his arm and took sixty pills all at once. Under Seventh Circuit law, these acts of self-harm pose "a serious harm" that satisfy the objective component of an Eighth Amendment claim. Estate of Miller, *ex rel.* Bertram v. Tobiasz, 680 F.3d 984, 989 (7th Cir. 2012); see Collins v. Seeman, 462 F.3d 757, 760 (7th Cir. 2006).

The plaintiff alleges that he saw Barth on several occasions on November 12, 2024. He says that during their first encounter, Barth took his vitals, cleaned the self-inflicted wound on the plaintiff's arm and applied a bandage. The plaintiff does not allege that the bandage was insufficient, that he continued to bleed or that he suffered other health issues from the cut on his arm. The court finds that the plaintiff's allegations about Barth's treatment of his cut do not state an Eighth Amendment claim.

The plaintiff alleges that after Barth treated his cut, staff placed the plaintiff in a strip-cage cell where his symptoms worsened. He says that he was having a hard time breathing and felt faint, but that Barth did not provide additional treatment and told him that he would be fine. When the plaintiff was moved to another cell, he became sick, vomited and lost consciousness. A correctional officer again took the plaintiff to see Barth, who denied the plaintiff's requests to go to a hospital and downplayed the plaintiff's concern that he was dying. Barth told the plaintiff that Dr. Smith had advised Barth not to send the plaintiff to a hospital. The plaintiff says that he remained in his cell overnight, vomiting and losing consciousness repeatedly. When an officer contacted a nurse, who may or may not have been Barth, the nurse allegedly told the officer that he "didn't care," and the plaintiff received no further treatment.

These allegations show that Barth was aware of the plaintiff's worsening conditions but took no further action to address his symptoms, which included vomiting and loss of consciousness. The Seventh Circuit has held that nurses

6

Case 2:25-cv-01107-PP    Filed 10/16/25    Page 6 of 10    Document 7

can, and generally must, "defer to a treating physician's instructions." Reck v. Wexford Health Sources, Inc., 27 F.4th 473, 485 (7th Cir. 2022). But a nurse is not shielded from liability where "it is apparent that the physician's order will likely harm the patient," Holloway v. Delaware Cnty. Sheriff, 700 F.3d 1063, 1075 (7th Cir. 2012) (quotation omitted); or "if the risk to the plaintiff's health was 'obvious.'" Rice *ex rel.* Rice v. Corr. Med. Servs., 675 F.3d 650, 683 (7th Cir. 2012). The plaintiff says that he was vomiting, losing consciousness and expressing fear that he was going to die. Disregarding those symptoms in deference to Smith's order may have put the plaintiff at risk of harm. Barth may have had legitimate reasons not to send the plaintiff to a hospital or provide further treatment, but those reasons are not obvious from the complaint. Construing the plaintiff's allegations in his favor (as the court must at the screening stage), the court finds that he sufficiently states an Eighth Amendment claim against Barth for failing to treat the plaintiff's worsening symptoms on November 12, 2024.

The plaintiff does not allege that he saw Dr. Smith on November 12, 2024, and he does not explain how Smith was aware of his condition. Smith cannot be liable for the plaintiff's allegedly inadequate medical treatment unless he was personally involved in the treatment. See Hildebrant v. Ill. Dep't of Nat. Res., 347 F.3d 1014, 1039 (7th Cir. 2003); Vance v. Peters, 97 F.3d 987, 991 (7th Cir. 1996). The plaintiff alleges that Smith's only involvement was telling Barth not to send the plaintiff to the hospital. As the court observed above, there may have been legitimate reasons not to send the plaintiff to the hospital. If so, Smith was

7

not deliberately indifferent by directing Barth not to send the plaintiff to the hospital, even without seeing or examining him. See Peterson v. Wexford Health Sources, Inc., 986 F.3d 746, 753 (7th Cir. 2021) (plaintiff failed to state Eighth Amendment claim against physician whose only involvement was instructing nurse to provide appropriate treatment for plaintiff's condition). But the allegations in the complaint also allow the opposite inference—that Smith disregarded the risk to the plaintiff's health by not examining him or taking other action. Although the allegations are thin, the court will allow the plaintiff to proceed on an Eighth Amendment claim against Smith. The court advises the plaintiff that to succeed on this claim, he will need to supply evidence that Smith personally and intentionally disregarded a substantial risk to the plaintiff's health or safety. See Collins, 462 F.3d at 761.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Mathew Barth and Dr. Smith. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$347.83** balance of the filing fee

by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution, where the plaintiff is incarcerated.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

9

Case 2:25-cv-01107-PP   Filed 10/16/25   Page 9 of 10   Document 7

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 16th day of October, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**